## State v. Frank A. Fogg.

October Term, 1901.

Present: Taft, C. J., Rowell, Tyler, Munson, Watson and Stafford, JJ.

Opinion filed December 7, 1901.

*Criminal Law—Argument of State's Attorney—New Trial— Newly discovered evidence.*

In a criminal prosecution, the argument of a state's attorney that the respondent went away from the locality where the crime was committed because he knew he was charged with the crime, is proper, when the circumstances show that the respondent may have had reason to believe that the matter had been presented to the grand jury and that he had been indicted, though there is no direct evidence that the respondent knew these facts.

In a prosecution for stealing a horse, the state proved that the respondent had the stolen animal in his possession and traded it to P., who was used as a witness for the state and denied that the respondent was the man from whom he obtained the horse and that he had never seen him before. Later in the trial P. was recalled, and identified the respondent as the man with whom he traded, and said that his failure to identify him, when on the stand before, was due to his defective sight and the poor light. The respondent brings a petition for a new trial supported by several affidavits that P. saw the respondent before the trial and stated in the presence of the affiants that he was not the man with whom he traded horses. *Held*, that there had been no lack of diligence on the part of respondent's counsel and that the testimony of P. was so vital that a new trial should be granted.

INDICTMENT for larceny of a horse. Plea, not guilty. Trial by jury at the December Term, 1900, Windsor County, *Start,* J., presiding. Verdict guilty. The respondent excepted.

Heard on the respondent's exceptions and petition for a new trial.

*Gilbert A. Davis* for the respondent.

*Chas. P. Tarbell,* State's Attorney, for the state.

TYLER, J. The only exception saved by the respondent at the trial was to the argument of the state's attorney, which was, in substance, that the respondent went away from the town of Hartford in the fall of 1896 because of his knowledge of the pendency of this charge against him, and that he kept away because he knew of the indictment. It appeared that the horse was stolen from a pasture in Hartford, in June, 1896; that the respondent was indicted therefor at the December term, 1896, of the Windsor County Court; that the indictment was not put on file and made public until February, 1900; that the respondent left Hartford in the fall of 1896, and that from February, 1897, until his arrest, in February, 1900, he had lived in South Burlington openly and under his real name.

The fact that the respondent went away from the scene of the crime, as the evidence tended to show, was a proper subject for comment by the state's attorney. It is true that there was no direct evidence that the respondent knew an indictment had been found, but Miller, who was in his employment when the larceny was committed, and who, as the respondent's evidence tended to show, committed the crime, was a witness before the grand jury when the matter was presented, and the respondent may have had reason to believe that the matter had been presented and that he had been indicted. The argument was nothing more than a statement of the facts of the respondent's disappearing and remaining away from his home, and asking the jury to draw an inference from those facts. The weight to be given them was for the jury to consider, with the circumstances that were in the respondent's favor—that he remained in this state and made no attempt at concealment. It cannot be held that the state's attorney's argument was not warranted.

*Therefore, for anything that appears in the exceptions, judgment ought to be rendered upon the verdict, with sentence and execution thereof.*

PETITION FOR NEW TRIAL.

The undisputed facts were that a bay mare was stolen from Charles Cowden and taken to Mendon, where it was exchanged with James Patten for a gray horse, and that the respondent afterwards had the gray horse in his possession and sold it to one Russell. The respondent testified that Rollin Miller, a half-witted person in his employ, was absent from his place in Hartford over a Sunday, and returned with the gray horse, which the respondent bought of him and that Miller disappeared the following day and never returned.

The state's evidence tended to show that two men, strangers to Patten, stopped at his place in Mendon, and after some conversation traded the bay mare—which afterwards proved to be the one stolen—for the gray horse; that the man who did the trading called his name Frank Fogg; that the other man was silent.

The respondent denied that he was the man who traded horses with Patten, and his evidence tended to show that he was at another place at that time.

The respondent's identity with the man who made the trade with Patten was an essential fact for the state to establish. Several witnesses called by the state testified to seeing two men passing along the highway with a horse, and from their description there would seem to be no reasonable doubt that they were the same men who appeared to Patten. None of them, however, knew the respondent, and they could only give a general description of the men. They did not testify that the respondent was one of the men they saw with the horse. The witnesses whom the state relied upon to establish the identity were J. L. Harriman and Patten. The former testified that he had worked with the respondent at a certain time and place, and knew him well; that he recognized the man who traded with Patten as the respondent, and that they had conversation about having worked together a few years before; that the respondent then traded horses with Patten, and the witness saw him lead the gray horse away. All this the respondent positively denied, and he introduced evidence tending to show that Harriman was mistaken in testifying that they had worked together, and swore that he never saw Harriman until he saw him in court.

The testimony of Patten was evidently very important,—so important that it is difficult to see how a jury could have

found the fact of identity without it. · When Patten was upon the stand the state's counsel requested him to look the respondent over and state whether he ever saw him before,— the respondent then standing, and facing the witness,—and the witness replied that he never had seen him. He was asked if he recognized anything about the respondent, and he replied that he did not. He was asked if the respondent was the man with whom he traded horses, and he replied, "No, sir; I don't think so; he don't look like the same man at all." The witness made no complaint that he could not see the respondent plainly. Patten was recalled the next morning, and testified that he saw the man with whom he traded coming up the court house stairs that morning and identified him as the respondent, and that his failure to identify him the evening before was by reason of his sight being defective and a lighted lamp standing between him and the respondent; and he denied that he testified the previous evening that he had never seen the respondent before.

The petition for a new trial is based upon the depositions of several witnesses to the effect that Patten saw the respondent before the trial began, when he was coming up the stairs, and while in the hall-way and witness-room, and declared in the presence of the deponents that he was not the man with whom he traded and that he never saw the respondent before. Patten also testified that the man with whom he traded horses had a little bit of a moustache, and it was the respondent's claim that he was about twenty-three years old at that time, and had no moustache, or if any, it was very slight. The respondent relies upon the depositions of several persons who say that some time before the trial, in a conversation with Patten in Mendon, he described the man with whom he traded as a different looking man from the respondent, in respect to his height, and especially in that the man wore a heavy mous-

tache. Other persons depose in support of the petition that they saw the two men when they were leading the bay mare along the road, that neither of them was the respondent, and that one answered the description which it is claimed Patten gave to the other deponents.

It does not clearly appear that the latter testimony could not have been, by reasonable diligence, obtained and used at the trial; but there appears to have been no lack of diligence on the part of the respondent and his counsel in respect to learning of the contradictory statements made by Patten out of court. It may be assumed that, had these statements been within the knowledge of respondent's counsel, he would have cross-examined Patten upon the subject, and introduced evidence of those statements. The affidavits of the respondent and his counsel show that knowledge of those statements was not received by them until after the trial. Patten's declarations made before the trial, if proved as alleged, would be likely to strongly affect his testimony given in court, and to lead to a different verdict.

It is a general rule that, when the new evidence only tends to discredit or impeach an opposing witness, it will not avail as ground for a new trial, especially if this evidence is directly denied by the witness sought to be impeached. 16 Am. & Eng. Ency. 5743; Appellate Procedure 792; 1 Bish. Cr. Pro. 1279. But this rule is subject to exceptions, as is the rule denying new trials upon newly discovered evidence which is merely cumulative. Mr. Bishop cites a large number of cases where the former rule has been varied. In *Husted* v. *Mead,* (Conn.) 19 Atl. 233, a distinction is drawn between new evidence to impeach the veracity of a witness, and that showing his contradictory statements out of court, and upon the ground that the person accused might not reasonably have known of such contradictory statements, while the general

reputation of the state's witness would be presumed to have been known..

An examination of many cases shows that the general rule is subject to exceptions, and is in the control of the court, which will not grant a new trial unless it is reasonably certain that injustice has been done, and that the result of a new trial will be different. In this case the testimony of Patten was so vital, and he was so liable to have been mistaken in his identification of the respondent, we think a new trial should be granted.

*Verdict set aside and new trial granted.*