## State *v.* Rena M. Brittell.

### February Term, 1918.

Present: Watson, C. J., Haselton, Powers, Taylor, and Miles, JJ.

Opinion filed February 27, 1918.

*New Trial—Newly Discovered Evidence—Sufficiency.*

The question raised on motion in arrest in this case is decided in *State* v. *Eaton, ante* p. 291 and that decision is controlling.

A new trial will not be granted, as a general rule, when the newly discovered evidence relied upon only tends to discredit or impeach an opposing witness, especially if it is denied by the witness sought to be impeached; but this rule is subject to exception, and is in the control of the Court, which will not grant a new trial unless it is reasonably certain that injustice has been done and that the result of a new trial will be different.

Where a petition for new trial brought by respondent after conviction of adultery was supported by the affidavit of respondent's minor daughter to the effect that a certain part of the latter's testimony given on trial against respondent was untrue, and by the affidavits of two others that respondent's daughter had told them, after the trial, that she had been persuaded to testify falsely, *held,* in view of a subsequent affidavit of respondent's daughter, retracting her former affidavit, of the fact that her testimony was corroborated on trial by that of other witnesses, and of other circumstances in the case, that it could not be said that it was reasonably certain that injustice had been done, and that the result of a new trial would be different, and the petition should be dismissed.

INFORMATION for adultery. Plea, not guilty. Trial by jury at the Special June Term, 1917, Windsor County, *Stanton*, J., presiding. Verdict, guilty. After verdict and before judgment respondent moved in arrest of judgment, for that the information contained no allegation that the *particeps criminis* was not the husband of respondent. Motion overruled. Respondent excepted.

After hearing in Supreme Court, respondent brought a petition for new trial, on the ground of newly discovered evidence. The opinion states the case.

*Millward C. Taft* for respondent.

*William S. Pingree,* State's Attorney, for the State.

MILES, J. This is an information charging the respondent with adultery. The case was tried by jury and a verdict was rendered against the respondent. After verdict and before judgment a motion in arrest was filed by the respondent, on the ground that the information contained no allegation that the parties to the alleged crime were not husband and wife.

In the case of *State v. Edward Eaton,* 92 Vt. 291, 102 Atl. 1025, handed down at the February Term of this Court, 1918, the jury, in the court below, found the respondent guilty of having committed adultery with the respondent in this case; and in this case the jury have found the respondent guilty of having committed the crime of adultery with the said Eaton; and the question raised here is decided in the opinion handed down in that case and that decision controls this case.

*Judgment that there is no error in the proceedings below and that the respondent take nothing by her exceptions.*

### ON PETITION FOR NEW TRIAL

After the case was argued in Supreme Court the respondent brings her petition for a new trial, supporting the same by the affidavit of Hazel M. Brittell, daughter of the respondent, a girl fourteen years of age, who was a witness on the trial of the respondent in the court below, and supported also by affidavits of William Holmes, of Dora Holmes, wife of said William Holmes, of the respondent and of her attorneys.

On the trial of the case in county court, Hazel M. testified, among other things, in substance as follows: That some time in 1913 she went with her mother and a little brother to Hanover, New Hampshire; that her mother, for about two months, worked for Mrs. Atkins at Hanover, when Edward Eaton, the man with whom the respondent is charged with having committed adultery, came there, and her mother and little brother went with him to Lebanon, New Hampshire, and her mother and brother did not return until about a week after they went away; that upon her mother's return the respondent took what goods she had at Atkins' and went to Hartland, Vermont, she and her brother going there with her; that they went to the house of one Elton Briggs, and there commenced housekeeping, describing the house as follows: ''Downstairs you go into the front door and you go right into the kitchen, turn to your right and go into the parlor, and from there go into the bedroom, and while you are in the kitchen you turn to your right and go right upstairs, and two bedrooms upstairs, about—as far as I can remember, they are right across the hall from each other.''

The witness then testified that she occupied one of the rooms upstairs with her little brother and her mother occupied the other room with Eaton; that she knew that fact because her mother and Eaton always went in there together at night; that there was only one bed in the room; that they stayed at the Briggs house about two months, when they went to what she called the Daley house, near by and on the same street. The witness then described that house with particularity and stated the persons occupying the rooms on the second floor. She testified that the respondent and Eaton slept in the bedroom downstairs having only one bed in it; that she had been in that room when Eaton and the respondent were there in their night clothes; that the family stayed at the Daley house about a year; that the respondent left there suddenly with the witness and her brother and they went from there to Ticonderoga; that Eaton remained behind to pack and ship the goods which later came to Ticonderoga; that Eaton came there later and occupied a bedroom with the respondent; that when they lived at the Daley house she had seen the respondent and Eaton in bed together.

On cross examination the witness testified that she and her brother were supported by the respondent and Eaton, when at Hanover and the year following; that Eaton stayed with them,

worked at the mill and bought the "stuff" for the house and paid nothing for his board; that when at the Briggs house and when they got there the respondent called Eaton her husband and Eaton introduced her as his wife, and that she and her brother called him papa and that Eaton spoke of her and her brother as the children, and at the Briggs house they all lived together as one family and that she tried to make them think that Eaton was her father, and that she continued to do so as long as they lived in Hartland.

The material statement in the affidavit of the respondent attached to the petition is a denial of the testimony of Hazel M., that the respondent and Eaton occupied the same room and bed when she was living in North Hartland, Vermont. The material statements in the affidavit of Hazel M. Brittell are, that on the trial of the respondent in county court she was persuaded by her father, William Brittell, and her uncle Hayes Brittell, to testify that she had seen her mother in bed with Mr. Edward Eaton; that that testimony was not true; that while living with them at North Hartland she had no suspicion that anything was wrong in the conduct of her mother toward Eaton and that she did not then and she does not at the present time believe them to be guilty of adultery; that it was because of the influence of her father and uncle Hayes that induced her to testify against her mother in county court as she did testify and that she made the affidavit freely and voluntarily and without influence, either by love or fear, but to do what was right and to undo the wrong that she had done; that she and her mother slept together during all the time they lived at the Daley and Briggs houses. The affidavit of William W. Holmes and his wife, Dora Holmes, are substantially the same, that Hazel M. told them, after the trial and conviction of the respondent, that she was persuaded at the time of the trial by her father and others to testify falsely and that she never knew of anything wrong between her mother and Eaton, and that she believed the respondent to be innocent of the crime of adultery; that she told this to them of her own free will and accord. The affidavits of the attorneys for the respondent were with respect to the diligence which they used in preparing the case for trial and that the facts stated in the affidavits were unknown to them on the trial in county court. The affidavit of the respondent attached to the petition is practically a reiteration of her testimony on the trial in county court.

The petition, strictly speaking, is not a petition for newly discovered evidence; but is a petition for a new trial because of a judgment obtained by false testimony, and the evidence by which the petitioner seeks to obtain a new trial is simply impeaching testimony. In *State* v. *Fogg*, 74 Vt. 62, 52 Atl. 272, this Court say: "It is a general rule that, when the new evidence only tends to discredit or impeach an opposing witness, it will not avail as a ground for a new trial, especially if this evidence is directly denied by the witness sought to be impeached." Further along in the opinion it is said: "An examination of many cases shows that the general rule is subject to exceptions, and is in the control of the court, which will not grant a new trial unless it is reasonably certain that injustice has been done and that the result of a new trial will be different."

This case, we think, lays down the true rule in cases of this character, and the inquiry here: Do the affidavits make it "reasonably certain that injustice has been done and that the result of a new trial will be different?"

In answering this question it should be noticed that Hazel does not say, either in her affidavit or in her declarations as testified to by Mr. and Mrs. Holmes, that her whole testimony is untrue. All that she denies of her testimony in county court, in her affidavit attached to the petition, is that she had not seen her mother in bed with Eaton; that she never heard Eaton introduce her mother as his wife nor refer to her as such, and that she and her mother slept together during all the time they lived at the Daley house and the Briggs house. The only change in her testimony in county court stated in the affidavits of Mr. and Mrs. Holmes is that she testified falsely in county court and never knew of anything wrong between her mother and Eaton. The rest of her testimony she leaves as given in county court. Not only was much of the testimony of the witness, at the trial in county court, uncontradicted by her affidavit attached to the petition, but, after that affidavit was given, she gave another in which she stated that she made the affidavit attached to the petition under the persuasive influence and pleading of the respondent; that after the trial in county court, on August 11, 1917, she went to reside in Woodstock, Vt., and was with her mother during a part of nearly every day for some months; that during a part of the month of August, while in Woodstock, the respondent frequently talked with her about the case and begged of her

to change her story to help her out of jail; that during these talks her mother cried and she cried and was much stirred and her sympathy was aroused to help her mother, if she could, and while in this state of mind she was called upon by an attorney who had assisted in the defence of the respondent at the trial in county court, who asked her if she wanted to change her testimony given in county court, and she told him that she did and that it was then that she made the affidavit attached to the petition; that she made the affidavit because of her love for her mother and because she then fully expected if the sentence was imposed her mother would be sent to prison and that she changed her story to save her mother from a sentence to imprisonment in State's Prison; that the testimony given by her at the trial, in county court, was true, and was given of her own free will and not because her father or uncle had asked her to so testify against the respondent.

In the counter affidavit of William D. Brittell, father of Hazel M., he emphatically denies that he ever influenced the testimony of Hazel M., given at the trial in county court, but on the contrary thereof, affirms that he urged her to tell the truth; and the uncle in his affidavit denies that he ever endeavored to influence her in her testimony given on the trial of the respondent.

The State's attorney, who conducted the prosecution of the respondent, in his counter affidavit, affirms that the father of Hazel M., in the State's attorney's presence, urged Hazel M. to tell the truth and the whole truth and that he, the affiant, also told her to tell the truth and nothing but the truth, and that the witness testified of her own free will and gave substantially the same testimony at the preliminary hearing as she gave in the county court; that from his own observation Hazel M., is very fond of her mother and that William D., her father, did not refuse to let Hazel M., see her mother while she was confined in the lockup in White River Junction, but he did insist that she should not go into that lockup alone, to see her mother, where she and Edward Eaton were both incarcerated; and that she was permitted to see her mother in company with her father.

Much of the testimony of Hazel M. given on the trial in county court was corroborated by other witnesses. Her description of the houses was corroborated by all the testimony bearing upon that subject. Elton Briggs, to whose house the respondent

went in company with Edward Eaton, testified that when the respondent came to his house she came there as the wife of Eaton; that they occupied the same sleeping room at his house and that Hazel M. and her brother occupied a room together; that they stayed at his house about three weeks; that when the respondent and Eaton came there, Eaton, who was a relative of Briggs' wife, introduced the respondent as his wife; that the introduction to Briggs' wife was: "I'll make you acquainted with my wife."

On the trial of the case in county court Dennis K. Daley testified that he was in the meat business during the time that she lived in Hartland and sold her meat from time to time and that he also knew her as Mrs. Eaton and that in Hartland she went by the name of Mrs. Eaton; that he was at that time a deputy sheriff and at the time the respondent left Hartland a warrant had been placed in his hands for the arrest of these people and that very shortly after receiving the warrant the family left Hartland; that the respondent left the morning of the day he received the warrant; that when he rented the house he supposed it was being rented to Mr. and Mrs. Eaton; that Eaton came to his store and purchased meat or something that he had for sale; that when he spoke to the respondent he addressed her as Mrs. Eaton and that she never denied but that she was Mrs. Eaton. The station agent of North Hartland, on the trial in county court, testified that Eaton arranged for the shipment of the goods to Ticonderoga to Mrs. Eaton; that she had met the respondent and Eaton on various occasions and always addressed them as Mr. and Mrs. Eaton and that she did not know of their going by any other name. Russell Unwin testified at the trial in county court that for two or three weeks he boarded at the Daley house and that while there he addressed the respondent as Mrs. Eaton and that she never told him that she wasn't Mrs. Eaton. Other testimony in the case, not herein referred to had a tendency, more or less, to corroborate the testimony of Hazel M. given on the trial in county court. She was cross examined at great length without her testimony being broken down in any degree and many things were called out during that cross-examination which were not alluded to in her direct examination, which apparently had not come to the attention of the State's attorney before the witness was produced upon the stand. Among such matters was her testimony that

she and her brother were supported by the respondent and Eaton when at Hanover, New Hampshire, and for the next year following; that Eaton stayed with them and bought the "stuff" for the house and that she and her brother called Eaton papa and the respondent called him her husband and that Eaton spoke of the respondent as his wife and that the witness continued to call him papa as long as they lived at Hartland.

It seems to us that if the father of Hazel M. or her uncle had known what the witness would testify about these matters called out on cross-examination, they would have informed the State's attorney of that fact and he would have called them out in the direct examination of the witness; besides, the witness, a girl of only fourteen years of age, who had lived with her mother up to a very short period of time before the trial of the case in county court, could not well have been induced to testify against her mother to facts which were not true and which she knew to be of so much importance to the respondent; and if not induced, as an abundance of evidence in the case tends to show she was not, a hostile feeling against Eaton could not well be assigned as a reason for giving testimony against her mother. On the other hand it is easy to perceive, that closeted with her mother weeping and pleading, how natural it might be for a girl of her tender age to be persuaded to come to her relief; and it is but natural that when that influence was removed and sober thought came to her of the consequences of committing perjury, that she should give the counter affidavit taken by the state.

From a careful examination of the transcript it is clearly apparent to us that, when testifying in the absence of influence, her testimony given on the trial in county court is substantially true. She has related it on three different occasions, without any substantial contradiction, once at the preliminary hearing, again at the trial in county court and again in her counter affidavit, besides relating the same facts under a rigid cross examination without any substantial contradiction in her statements. If a new trial were to be granted, so far as anything appears in support of the petition, another trial would only differ from the trial at which the respondent was convicted to the extent of the impeachment of the witness' testimony on account of her statement to Mr. and Mrs. Holmes and her affidavit attached to the petition for a new trial, which, weighed in the light of the influence of the importunities, the love of her mother

and the disgrace which her conviction would cast upon her, must at most be very slight in the minds of the jury as affecting her testimony, supported as it was by other witnesses. With all these matters standing out in corroboration of the testimony of the witness on the trial in county court we are unable to say that "it is reasonably certain that injustice has been done and that the result of a new trial will be different."

*The petition is dismissed.   Let execution be done.*